FILED

2026 Feb-17 PM 06:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| THE RIGHT REVEREND JULIAN M. DOBBS, an individual,<br><br>    *Plaintiff*<br><br>*v.*<br><br>THE RIGHT REVEREND DEREK L.S. JONES, *individually and as agent of the Jurisdiction of the Armed Forces and Chaplaincy*; and JURISDICTION OF THE ARMED FORCES AND CHAPLAINCY,<br><br>    *Defendants* | Case No.<br><br>**Complaint**<br><br>*Jury Trial Demanded* |

Submitted:  February 17, 2026

Marc J. Mandich (ASB-9346-H48E)
François M. Blaudeau (ASB-7722-D32F)
Odeh J. Issis (ASB-4785-S83P)
SOUTHERN MED LAW
2762 B M Montgomery St., Ste. 101
Homewood, AL 35209
D: 205.564.2741
F: 205.649.6386
francois@southernmedlaw.com
marc@southernmedlaw.com
odeh@southernmedlaw.com

*Attorneys for the Plaintiff*

## I.    <u>TABLE OF CONTENTS</u>

I.    TABLE OF CONTENTS ................................................................2

II.   COMPLAINT ........................................................................3

III.  PARTIES ............................................................................3

IV.   JURISDICTION AND VENUE ...................................................4

V.    INTRODUCTION ..................................................................4

VI.   FACTUAL ALLEGATIONS ......................................................5

VII.  COUNTS............................................................................22

      DEFAMATION ...................................................................22

VIII.    AD DAMNUM .................................................................23

IX.   PRAYER FOR RELIEF...........................................................24

## II.    COMPLAINT

COMES NOW the Plaintiff, the Right Reverend Julian M. Dobbs ("Bishop Dobbs"), Bishop of the Anglican Diocese of the Living Word ("ADLW") and current Interim Ecclesiastical Authority of the Anglican Church in North America ("ACNA"), by and through the undersigned counsel, and hereby files this Complaint against the Defendants, the Right Reverend Derek L.S. Jones ("Bishop Jones")[1] and the Jurisdiction of the Armed Forces and Chaplaincy ("JAFC").[2] (Defendants are hereinafter collectively referred to as "Defendants").

### III.    PARTIES

1.      Plaintiff Bishop Dobbs is an adult citizen, resident and domiciliary of the State of Virginia.

2.      Defendant Bishop Jones, upon information and belief, is an adult citizen and domiciliary of Shelby County, Alabama. At the time Bishop Jones made the statements complained of in this Complaint, he was acting in the course and scope of his employment as President of co-defendant, the JAFC.

3.      Defendant the JAFC is a not-for-profit corporation formed and validly existing in good standing under the laws of the State of Alabama. Its principal office

---

[1] Bishop Jones is being sued both in his individual capacity and in his capacity as agent (President) of the JAFC.

[2] When referred to collectively herein, Defendants will be referred to as **"Defendants."** When referred to individually, Defendant Bishop Jones will be referred to as **"Bishop Jones"** and Defendant Jurisdiction of the Armed Forces and Chaplaincy will be referred to as the **"JAFC."**

for the conduct of business is at 1400 Hwy. 25, Brierfield, AL 35035, thus, the JAFC

is a domiciliary of Bibb County, Alabama for jurisdiction and venue purposes.

## IV.     JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to

28 U.S.C. § 1332 because there is complete diversity of citizenship here between

Plaintiff and Defendants and the amount in controversy exceeds $75,000.00.

5.      This Court has personal jurisdiction over Defendants as both are

domiciliaries of the State of Alabama and are thus subject to general personal

jurisdiction of all Alabama courts, state and federal.

6.      Venue is proper in the United States District Court for the Northern

District of Alabama pursuant to 28 U.S.C. § 1391(a) because Defendants' libelous

statements, in whole or in part, were made from within this judicial district.

Defendants also both reside within this district for venue purposes.

## V.     INTRODUCTION

7.      This suit arises out of false and defamatory statements made by

Defendants concerning Bishop Dobbs and various many-year-old and previously

investigated allegations of financial crimes or misdeeds on his part (all of which are

false). Defendants gratuitously resurfaced these false claims in the past year as part

of their efforts to destroy the reputations of Bishop Dobbs and the Anglican Church

in North America ("ACNA") and, thereby, better Defendants' financial position and

4

standing in the eyes of the Anglican faithful in North America. Defendants have made these false assertions repeatedly in the public record, including within litigation the JAFC instituted against the ACNA that these allegations against Bishop Dobbs have nothing to do with, in an all-out campaign to make the community, especially the Anglican faithful in North America and abroad, view Bishop Dobbs and other leaders within the ACNA (and, of course, by extension the ACNA) with disdain and disassociate from them (in favor of association with the JAFC).

## VI.    **FACTUAL ALLEGATIONS**

8.    As of the Fall of 2025, due to matters unrelated to and completely separate from the claims made herein, Defendants have decided the Province of Bishop Dobbs' Diocese, the Anglican Church in North America ("ACNA"), is now Defendants' adversary. Indeed, as of December 22, 2025, the JAFC formally filed a very acrimonious civil suit against the ACNA. The details of the underlying claims and allegations have no bearing on nor relevance to this suit, but as the complaint filed in that litigation makes clear, Defendants herein have, and at the time of the statements complained of herein had, a clear motivation to smear the character and credibility of the ACNA and those associated with it (like Bishop Dobbs).

9.    This motivation was and remains to prevent current and future JAFC-endorsed chaplains disassociating from the JAFC, amidst (a) the JAFC's public fight with the ACNA, and (b) third-party concerns raised (also publicly) regarding Bishop

Jones' alleged abuse of his authority and position.[3] As the JAFC notes in its complaint against the ACNA, chaplains leaving the fold would result in the JAFC's losing its revenue stream of roughly $1,200,000 per year in gifts and tithes from said chaplains,[4] which is a clear financial motivation that explains Defendants' actions and false and disparaging statements described hereinbelow. The timeline and nature of the events described below further solidifies this assertion.

10.    On or about September 22, 2025, in response to the ACNA's then Archbishop (Stephen Wood) "inhibiting"[5] Bishop Jones (which, in turn, was due to Bishop Jones' refusal to participate in an investigation of claims including abuse of his authority made by chaplains he oversaw), the JAFC purported to terminate its affiliation with the ACNA, and the JAFC and Bishop Jones conducted an "all hands" zoom meeting with the hundreds of Anglican chaplains "endorsed"[6] by them.

11.    This zoom meeting was recorded and later publicly disseminated (online and to the press); moreover, Bishop Jones explicitly stated on the zoom that

---

[3] Importantly, it was Bishop Jones himself who put these third-party concerns and accusations into the public record. They were the subject of a "Godly admonition" issued to Bishop Jones, but these admonitions remain private. It was Bishop Jones who made the matter public, thereby prompting his accusers to speak out in the Anglican press as well.

[4] *See* R. Doc. 1 at ¶ 37; R. Doc. 6 at p. 17; and R. Doc. 35 at ¶¶ 40 & 127, filed in *Jurisdiction of the Armed Forces and Chaplaincy v. Anglican Church in North America*, Civil Action No. 2:25-cv-12848-BHH, United States District Court for the District of South Carolina (Charleston Division).

[5] Under Anglican Canon law, an "inhibition" is a formal, temporary suspension of a member of the clergy – including bishops, priests or deacons – from the exercise of ordained ministry.

[6] For reasons that need not be fully explained here, chaplains in governmental service in the U.S. (*e.g.*, chaplains in the armed forces) must be "endorsed" by a recognized endorsing authority of the denomination they serve in order to be employed as chaplains.

he wanted those attending to spread the information he shared, that he "want[ed] it out there" and that he wanted Bishop Dobbs and others within the ACNA – either directly or indirectly referenced by Bishop Jones during this nearly 2-hour-long zoom meeting – "exposed for the liars they are." Bishop Jones further demonstrated the underlying motivation (described above) for the ACNA/Bishop-Dobbs-smear-campaign he undertook in this zoom meeting, as he explicitly stated it: "I'm going to ask you to stay with me[.]" This was all about causing the chaplains to view the ACNA and Bishop Dobbs negatively and therefore disassociate from them (and of course, on the other hand, continue to associate with the JAFC).

12.    This zoom meeting was attended by other executives and/or board members of the JAFC who explicitly or tacitly endorsed Bishop Jones' diatribe against the ACNA and Bishop Dobbs (among others).

13.    At all times during this zoom meeting, Bishop Jones was acting within the course and scope of his employment with the JAFC – this was a call in which he was speaking, as President and Bishop for the JAFC, to the entirety of the JAFC's endorsed Chaplain corps.

14.    Bishop Jones began his long remarks by denying any wrongdoing, claiming the "Godly admonition"[7] he received from Archbishop Wood was the

---

[7] Under Anglican Canon law, a "Godly admonition" is a formal, written pastoral directive from a Bishop to a member of the clergy, addressing specific behavioral, doctrinal, or disciplinary issues. It is a canonical act aimed at correction and restoration, often used in cases of misconduct before more severe disciplinary actions like inhibition or formal

result of essentially a coup against him and the JAFC, and that it was procedurally improper anyway since – in his view – the ACNA has no authority over him and the JAFC (for specific, procedural-type reasons he went on at length about). He also touted the merits of the JAFC while decrying the ACNA as a corrupt organization run by "felonious" Bishops who had "broken" their vows, referring specifically to Bishop Dobbs. Again, all of this was explicitly for the purpose of encouraging the chaplains to "hang with" the JAFC, to condemn the ACNA and its leadership as corrupt, and to disassociate from the ACNA and its leadership.

15.    Bishop Jones did not discuss in any meaningful detail what the claims against him were. Deflecting from that focus (*i.e.*, attacking rather than defending), he referred or alluded to many purportedly long-standing criticisms of the ACNA and its leadership. In large part (especially regarding Bishop Dobbs), he did so by referring to previously investigated, unfounded and debunked rumors and gossip to revive these old, stale criticisms for the sole purpose of making the Anglican faithful, clergy and the larger community view Bishop Dobbs and the ACNA negatively.

16.    At about the 0:28:52 mark in the zoom call, Bishop Jones notes he learned Bishop Dobbs was going to be part of the ACNA's investigation and states,

---

trials. They are typically privately conveyed to the clergy member in question and *not made public*. Part of the admonition to Bishop Jones was directive that he agree to participate fully in Provincial investigation of the claims. Upon information and belief, Bishop Jones' refusal to do so led to his inhibition by Archbishop Wood.

"I'm going to talk about Bishop Dobbs here in a moment, and it's going to be a bombshell, and it's just going to create some angst in some of you."

17.    Bishop Jones did not return to the subject of the Bishop Dobbs "bombshell" until another (roughly) 43 minutes later in the zoom (about the 1:11:20 mark), when one of the participants reminded him, "you were going to say something about Bishop Dobbs." In the interim between his "it's going to be a [Dobbs] bombshell" teaser and this reminder, Bishop Jones went through communications between the JAFC and ACNA and their respective "chancellors" (lawyers in the Anglican ecclesiastical legal system), coloring all of the ACNA's actions as disingenuous and motivated by the ACNA's "power hungry" and "increasingly woke" nature. The entirety of his remarks is an obvious 'I'll just smear my accusers and the system rather than defend my own actions' attempt.

18.    Bishop Jones' ensuing character assassination of Bishop Dobbs was completely false, misleading, highly defamatory and concerned over 5-year-old allegations that both Bishop Jones and the JAFC knew (or otherwise recklessly or intentionally ignored) had been investigated, resulting in finding of zero wrongdoing on Bishop Dobbs' part (indeed, that no wrong even occurred to begin with).

19.     The matter was Bishop Jones' own previously investigated (*false*) allegations regarding JAFC funds intended for the Convocation of Anglicans in North America (CANA) being stolen by Bishop Dobbs.[8]

20.     The false and defamatory statements made by Bishop Jones and endorsed by the rest of the JAFC leadership on the call (either explicitly or tacitly) were as follows:

    i.   "As CANA was going through its last kind of throes and Bishop Dobbs moved CANA East into become [sic] the ministry known as the Diocese of the Living Word, he passed the financial statements of CANA to Bishop Felix Orji and myself .... When we received that document, there was a glaring omission of any receipt of any money that [the JAFC] had been giving to him over the years."

**Both underlined portions are false. Bishop Dobbs never sent CANA's financial statements to Bishops Jones and Orji. Nevertheless, as Bishop Jones became aware years before this zoom call, independent forensic audit of CANA's financial statements and records revealed that all of the JAFC's money was accounted for therein and had been**

---

[8] Bishop Jones almost discussed a second subject, which also concerned totally false, unfounded and scandalous (not to mention old, stale and denied by the people involved) allegations regarding Bishop Dobbs, but for whatever reason, he described it as a "sordid affair" but then stopped himself mid-sentence and decided not to delve further ("you know what, I'm not even going to go into it"). Bishop Dobbs avers that alluding to this fabricated "sordid affair" also constitutes an actionable defamatory statement.

*deposited in the proper CANA account. In fact, in light of Bishop Jones' re-visiting these long-since-debunked allegations, Bishop Orji has again formally denounced the claims in writing.[9]*

ii. "We filed a complaint – Bishop Mike, Bishop Mark and I – to the Archbishop, and he appointed Bishop David Anderson to investigate. <u>What David Anderson discovered with a forensic accountant and an IRS forensic accountant proved that, in fact, they could not account for $47,862 that we sent to CANA that turned out went into Julian Dobbs' personal account</u>."

*The underlined portions of this statement are complete and total fabrication. Bishop Anderson had to step away before investigation concluded due to personal health reasons. The only independent forensic accountant to complete an investigation and report found that no money was diverted to Bishop Dobbs' personal account; in fact, the accountant could trace every dollar of the JAFC's money in CANA's Quickbooks files and it all went to CANA as it was supposed to (a clerical error in stamping a few checks "CANA East" that*

---

[9] A true and correct copy of Bishop Orji's Nov. 11, 2025 letter is attached hereto as **Exhibit A** ("In my capacity as the Missionary Bishop [of CANA] who succeeded [Bishop Dobbs], I wish to state that we have no evidence that Bishop Dobbs defrauded or misused any funds belonging to CANA. … [F]orensic audit showed no misappropriation of funds and absolutely nothing improper by Bishop Dobbs. **Any statements or assertions to the contrary are patently false**.") (emphasis added).

*should have been stamped "CANA" created this initial confusion on Bishop Jones' part, but investigation conclusively revealed the money still went to CANA as it was supposed to).[10]* <u>*Defendants, upon information and belief, received a copy of that report at the time (2020) and were well aware it cleared Bishop Dobbs, yet in their effort to tarnish the ACNA and Bishop Dobbs, they have decided to falsely re-plow this ground.*</u> *Finally, the IRS was never involved in any investigation (let alone found any wrongdoing). In fact, Bishop Jones contradicts himself on this point just seconds later in the zoom call (indicating he* <u>*considered*</u> *going to the IRS, but did* <u>*not*</u> *do so).*

iii. "[Bishop Dobbs] absconded with $47,000, a felony, and we were prepared to go to the IRS. But I was asked – and I was a friend to Julian – and the chancellors [and Bishop Mike] agreed … the agreement was that restitution would be paid, that we would get the money back, and that Bishop Julian would not be allowed to serve in any position of leadership in the ACNA, he could only remain the Diocesan and that we would let this go."

---

[10] A true and correct copy of the May 13, 2020 findings of the independent forensic accountant (Cusano Associates C.P.A., P.C.) is attached as **Exhibit B**. A true and correct copy of September 23, 2020 follow-up findings by Cusano is attached as **Exhibit C**. Bishop Anderson questioned why Mr. Cusano did not make use of Quickbooks' "Audit File" as part of his investigation; as a result, Mr. Cusano took a look at the "Audit File" and further determined, conclusively, that **no one** had altered any notations therein ("To be clear, the audit file reveals that no one accessed the CANA Quickbooks file and made changes to the checks as referenced by Bishop Jones after his allegations were received.").

*The first underlined portion is simply re-iteration of (ii), supra, and is equally false. But importantly, since these are allegations of criminal conduct (<u>explicitly</u> so here), they constitute defamation per se. The remainder, Defendants knowingly fabricated as well. There <u>was</u> an agreement to let the matter go, but it included absolutely nothing about restitution (there was no restitution to be paid – the money went where it was supposed to) nor anything about restricting Bishop Dobbs from serving in leadership in the ACNA. After investigation revealed no stolen funds whatsoever, Bishop Dobbs agreed to provide a formal, written statement of regret <u>that the clerical error in the check stamping had caused an issue for the JAFC</u>.[11] He never admitted to nor apologized for any misappropriation of funds because no such thing had occurred. Upon receiving this statement of regret, both Bishop Jones and the JAFC's chancellors confirmed its sufficiency (this and <u>nothing more</u>) to resolve the matter.[12]*

iv. "So be aware we have Bishops that have literally broken, and been felonious in their actions, that are still serving in the ACNA."

---

[11] A true and correct copy of this March 22, 2021 statement of regret is attached as **Exhibit D**.

[12] A true and correct copy of the correspondence (email and attachment) to this effect is attached as **Exhibit E**.

*This is an obvious reference to Bishop Dobbs, whom Bishop Jones had been discussing and accusing of felonies for some time on the call now. So this is now a handful of times he directly (and falsely) accused Bishop Dobbs of committing crimes or felonies on this call.*

21.    In October 2025, the JAFC filed the totally unrelated lawsuit referenced above against the ACNA (*see* ¶ 9 & fn. 3, *supra*). Bishop Dobbs is not a party to this lawsuit, nor does it concern any claims regarding any conduct of his. The suit concerns unrelated claims that the ACNA allegedly violated the JAFC's various intellectual property rights and otherwise unfairly competed with the JAFC.

22.    Nevertheless, Defendants caused to be published a sworn Declaration of Bishop Jones in connection with motion practice by the JAFC in the case, which included these false statements concerning Bishop Dobbs *despite their complete irrelevance to the case*.[13] Because the statements regarding Bishop Dobbs contained in the Declaration are completely irrelevant to that lawsuit, they are actionable re-publications of Bishop Jones' statements on the zoom call (as well as some new knowingly false and defamatory allegations), made and/or published by both Defendants here, under applicable law. Further and/or in the alternative, upon information and belief, Defendants reiterated and/or confirmed these statements

---

[13] R. Doc. 21-1 filed in *JAFC v. ACNA*, Civil Action No. 2:25-cv-12848-BHH, D.S.C. (Charleston Division). For ease of reference, a true and correct copy of the Declaration is attached hereto as **Exhibit F.**

*outside of the court proceedings* in interview with the Washington Post. The statements later appeared in the Washington Post article attached hereto as **Exhibit K**. The reiteration of those statements and/or confirmation thereof to the reporter are not privileged.

23.    The portion of the Declaration that concerns Bishop Dobbs is simply wider and more public dissemination of (mostly) the same false and defamatory statements Bishop Jones had previously made on the above-described zoom call. To double down on these knowingly false accusations *under oath* in a very public, federal court filing, especially when they were unnecessary to and irrelevant to the subject matter of the lawsuit, evinces Defendants' clear intent to simply cause as much harm to the reputation of Bishop Dobbs (and, by association, the ACNA) in the wider community as possible.

24.    Notably, Defendants' false assertions change in contradictory ways in the Declaration, which only further evinces the intentionally false and damaging posture in which they were put forth. The false and defamatory statements in the Declaration (**Exh. F** hereto) are:

    i.    [Decl., ¶ 31] "In September 2019, JAFC requested an investigation into ACNA Bishop Julian Dobbs for <u>missing funds not reported on the financial statements of CANA, totaling more than $48,000</u>."

*The thorough debunking of this statement, supra, need not be re-hashed. But it is also notable in both the earlier iteration on the zoom call and here, Defendants claim they sought investigation of $48,000 of allegedly missing funds, but Jones' own contemporaneous email shows the investigation sought concerned four checks totaling $3,750 that were incorrectly stamped "CANA East" (rather than "CANA"), as well as a proper accounting of $11,250 in JAFC money that they asserted they could not locate in CANA's books (for a total of only $15,000 even in question and only $3,750 actually alleged (incorrectly) to have gone to the wrong entity).[14] It can be difficult to keep a story straight when it is not a factual one.*

ii. [Decl., ¶ 32] "In October 2019, Plaintiff discovered an additional financial indiscretion matter involving Bishop Dobbs and Barnabas Aid, which had been closed by ACNA."

*This is a reference to previously investigated (false) allegations that Bishop Dobbs sought reimbursement for inappropriate expenses billed to (or otherwise violated fiduciary duties owed to) a charity, the*

---

[14] *See* Oct. 9, 2019 correspondence attached as **Exhibit G.** Also, not only were Defendants privy to the independent CPA audit discussed above, but that no money was diverted and all JAFC money was accounted for and properly went to CANA was also personally explained to Bishop Jones in email sent by the Chancellor for Bishop Dobbs' Diocese roughly seven years prior when the issue arose. *See* Nov. 26, 2019 correspondence attached hereto as **Exhibit H.**

*Barnabas Fund, he served in various capacities from 2013 to 2019. While these claims were made back in 2018-2019, what Defendants falsely and misleadingly omit from this statement is that the ACNA did not just "close" the matter, the ACNA had the matter fully investigated and the Barnabas Fund accepted the matter as closed following same.[15] In fact, Barnabas Aid International's current leadership, in response to the resurfacing of these allegations, has stated "On the basis of what I have seen and know, I have no cause to doubt Julian [Dobbs'] integrity."[16] So once again Defendants, in clear and concerted effort to simply destroy Bishop Dobbs' good name (especially in the Anglican community itself), falsely state and/or insinuate he engaged in criminal activity that Defendants knew or recklessly ignored had been fully investigated and resolved with no finding of any wrongdoing on Bishop Dobbs' part.*

iii. [Decl., ¶ 33] "In April 2020, <u>due to the inaction of ACNA, JAFC contacted the IRS concerning Bishop Dobbs</u>."

*As demonstrated above, Defendants were well aware when they put this false sworn statement into the federal court record that (1) the*

---

[15] *E.g.,* Oct. 9, 2019 and Oct. 14, 2019 correspondence attached as **Exhibits I & J, respectively.**

[16] *See* **Exhibit K** hereto at p. 9.

*ACNA had investigated the matter to Defendants' satisfaction (finding only a bookkeeping error that resulted in confusion, <u>no</u> theft or wrongdoing of any kind); and (2) the IRS was never involved in the matter (a point on which Bishop Jones has repeatedly contradicted himself as he has repeated these false and defamatory statements in multiple different fora in a matter of mere months).[17]*

iv. [Decl., ¶ 36] "In February 2021, <u>Bishop Anderson reported that evidence showed that missing money went into Bishop Dobbs' personal account following a forensic audit</u>."

*See Paragraph 20(ii), supra, and documents attached. Defendants here knowingly doubled down on provably false statements.*

v. [Decl., ¶ 37] "In March 2021, <u>Bishop Dobbs was found to have absconded with approximately $48,000 of JAFC's money</u>. <u>Dobbs signed a letter admitting he "mismanaged" money</u>."

*See ¶ 20(iii), supra, and documents attached, including the very letter from Bishop Dobbs Defendants reference here (Exh. D). On its face, it demonstrates Bishop Dobbs apologized (expressed regret) for the bookkeeping error and resulting confusion only. Investigation found the exact opposite – no money went anywhere other than where it was*

---

[17] *See* Paragraph 27 & fn. 20, *infra.*

*supposed to. And certainly, no one found Bishop Dobbs "absconded"*

*with any money (of course, since there was no missing money!).*

25.     On December 22, 2025, the JAFC filed a verified amended complaint in its unrelated action against the ACNA,[18] this time incorporating many of the false and defamatory statements from Bishop Jones' earlier declaration and zoom call into the pleading itself by reference (again, despite the fact that these allegations have no bearing whatsoever on the claims at issue in the pleading):

i.    [¶ 116] "Dobbs has had a grudge against Bishop Jones and JAFC since 2019 when they confronted Dobbs <u>over significant financial indiscretions [he] **had committed** against JAFC and its employees</u>."

*While opinion may not be actionable, for what it is worth, Bishop Dobbs holds no grudge against Defendants. But the assertion that Bishop Dobbs "had committed" any crimes or indiscretions against the JAFC and its employees is patently false, as demonstrated above.*

26.     Finally, Defendants knowingly caused to be published a fourth dissemination of these false and defamatory allegations, this time to the widest audience yet (the Washington Post's global readership). Bishop Jones was interviewed by the reporter who wrote this piece (which appeared on the Washington

---

[18] *See* R. Doc. 35 filed in *JAFC v. ACNA*, Civil Action No. 2:25-cv-12848-BHH, United States District Court for the District of South Carolina (Charleston Division)

Post's front page bearing a large photograph of Bishop Dobbs) and, though Bishop Jones changed some underlying facts *again*, he quadrupled down on Defendants' false and defamatory assertions.[19]

27.    The statements need not all be specifically listed here again, with the exception of one major change in the story. Numerous times on the zoom call and in federal pleadings (as noted above), Bishop Jones referred to multiple different investigations (some fiction, some not)[20] and then proclaimed complete fiction as to any findings thereof. But presumably faced with the reporter's push back regarding what the only real investigatory documents found (Bishop Dobbs did nothing wrong and all money was accounted for), Bishop Jones then pivoted, stating this was a determination made by *JAFC* investigation: "In March 2021, the [JAFC v. ACNA] lawsuit alleges, Dobbs 'was found to have absconded with approximately $48,000' of the chaplaincy's money – **a determination made <u>by the chaplaincy</u>, Jones clarified to the Post.**"[21]

---

[19] *See* **Exhibit K** hereto (Ira Shapira, *He suspended the archbishop [Wood], but faced his own probes – financial ones*, Washington Post (Dec. 30, 2025), available at: <u>https://www.washingtonpost.com/investigations/2025/12/30/anglican-church-leader-dobbs-investigations/</u> (last visited Jan. 31, 2026).

[20] These include an IRS investigation (fiction), Bishop Anderson's investigation (started but not completed as he had to step away for personal health reasons), independent CPA investigation (found no missing funds nor any wrongdoing by Bishop Dobbs).

[21] **Exhibit K** at p. 11 (emphasis added). In this interview, Bishop Jones subtly demonstrated the falsity of his previous assertions as this is yet another notable changing-of-the-story in light of inconvenient facts. In his statement to the Washington Post, Bishop Jones' prior assertions of an "IRS accountant" investigation that found "Dobbs had absconded with $47,000, a felony" turned into a "determination made <u>by the [JAFC]</u>." **No such investigation was ever undertaken by the JAFC, let alone found**

28.     This Washington Post piece is not the only damage caused to Bishop Dobbs' reputation by Defendants' circulation and repeated re-circulation of the same false and unfounded accusations of criminal activity. He has suffered severe emotional distress and mental anguish as a result of these accusations, they have caused a great deal of upset in his daily life, they have harmed the relationship of trust between the Bishop and his flock that is so pivotal in the context of his ministry, they have caused him embarrassment, have held him up to scorn in the eyes of the community, and he has had his standing in the Anglican community badly tarnished as a result of Defendants' false and defamatory statements.

29.     Following Bishop Jones' "bombshell" zoom call (over the months that followed and amidst the allegations being put forth in the JAFC's lawsuit against the ACNA, as well as widely disseminated in Anglican and secular press), Bishop Dobbs (including in response to the Post's request that he respond to Bishop Jones' allegations), the Standing Committee of his Diocese, as well as the ACNA and its leadership have all had to respond publicly to these very public accusations not only to the Anglican clergy and faithful they serve but to the wider public as well.[22]

---

wrongdoing or misplaced funds. If such an investigation did occur, it somehow happened without Bishop Dobbs' or the ACNA's knowledge whatsoever, which makes no sense.

[22] Some of these formal public responses are attached hereto as **Exhibit L** (Dobbs' Sept. 24, 2025 defense of himself to the ADLW Standing Committee), **Exhibit M** (the ADLW Standing Committee's Sept. 25, 2025 public statement refuting the allegations against Dobbs), **Exhibit N** (former Archbishop Beach's Dec. 6, 2025 Letter to ACNA Bishops in support of Dobbs). *See also* former Archbishop Beach's and Bishop Dobbs' refutations described in **Exhibit K** hereto, as well as **Exhibit A** (Bishop Orji's Nov. 11, 2025 refutation of the allegations).

30.    Again, all of Defendants' statements described above are completely false. At the time of speaking, writing, publishing or causing them to be published, Defendants knew these statements were false and/or acted with reckless disregard of whether they were false or not. They were made for the purposes of publicly defaming Bishop Dobbs (and, by association, the ACNA), harming their interests as ministers of the Anglican faith, harming their financial and personal interests, and of course, causing those within and without the Anglican faith to disassociate from the ACNA and Bishop Dobbs (in favor of association with the JAFC and to the JAFC's benefit). This is especially so with respect to the chaplains that provide the JAFC's revenue stream.

31.    On February 4, 2026, Bishop Dobbs made demand to Defendants in writing that they publish a *full* retraction of the defamatory statements detailed above. To date, Defendants have failed and/or refused to publish a retraction.

## VII.    COUNTS

### DEFAMATION

32.    Bishop Dobbs realleges and incorporates by reference the above allegations of this Complaint as though fully set forth herein.

33.    Defendants intentionally, maliciously and/or recklessly published and caused to be published the false and defamatory statements about Bishop Dobbs detailed above.

34.    Defendants did so without authorization and knowing the statements were false and/or acting in reckless disregard of whether they were false or not.

35.    Defendants acted with the intent to prejudice Bishop Dobbs in the public perception, to injure his personal reputation and his reputation as an Anglican Bishop and minister of the Anglican faith, to deter others from associating with Bishop Dobbs or engaging with him as a minister of the Anglican faith, and to otherwise damage Bishop Dobbs.

36.    Bishop Dobbs has been damaged as a result of Defendants' defamation and hereby demands judgment against Defendants for general, compensatory and punitive damages to be determined by a jury, as well as costs and such other relief as the Court or jury deems just.

## VIII.    **AD DAMNUM**

Based on the allegations as set forth above, Bishop Dobbs avers that Defendants are liable for compensatory damages, punitive damages, interest, costs and expenses incurred in pursuing this litigation. Bishop Dobbs further avers that punitive damages should be assessed in an amount sufficient to punish the wrongful conduct of Defendants, to deter similar conduct in the future and to serve as an example to deter others from engaging in similar wrongful conduct.

## IX.     **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

i.     That process issue and Defendants be served in accordance with the Federal Rules of Civil Procedure;

ii.     That Plaintiff be awarded general and compensatory damages in an amount to be determined by the enlightened conscience of a jury, as well as interest, costs and expenses;

iii.     That Plaintiff be allowed to amend this Complaint in accordance with the Federal Rules of Civil Procedure;

iv.     That Plaintiff be awarded punitive damages;

v.     That Plaintiff have a trial by jury as to all issues; and

vi.     That Plaintiff be awarded such other relief as this Court and/or jury may deem just and proper.

Submitted:   February 17, 2026

Marc J. Mandich (ASB-9346-H48E)
François M. Blaudeau (ASB-7722-D32F)
Odeh J. Issis (ASB-4785-S83P)
SOUTHERN MED LAW
2762 B M Montgomery St., Ste. 101
Homewood, AL 35209
D: 205.564.2741
F: 205.649.6386
marc@southernmedlaw.com
francois@southernmedlaw.com
odeh@southernmedlaw.com

*Counsel for Plaintiff*

**PLEASE SERVE:**

**The Right Reverend Derek L.S. Jones**
**101 Tony Holmes Drive**
**Pelham, AL 35214**

**The Jurisdiction for the Armed Forces and Chaplaincy**
***Through its registered agent for service of process:***
**Business Entity Services, LLC**
**3066 Zelda Rd, Ste. 347**
**Montgomery, AL 36106**