FILED
2026 Aug-07 AM 09:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| THE RIGHT REVEREND JULIAN M. DOBBS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 2:26-cv-00267-MHH |
| THE RIGHT REVEREND DEREK L.S. JONES; JURISDICTION OF THE ARMED FORCES AND CHAPLAINCY, | ) ) ) ) ) ) | Declaration of The Right Reverend Bishop L.S. Jones in support of Defendants' Motion to Dismiss |
| Defendants. | ) ) | |

STATE OF ALABAMA )
                  )
           ss.:
COUNTY OF SHELBY )

DEREK L.S. JONES declares as follows pursuant to 28 U.S.C. § 1746:

1. I know the following information to be true on the basis of my own personal knowledge, except where my statements are made on information and belief, and as to such, I verily believe them.

2. I submit this declaration in support of Defendants' motion to dismiss.

3. I view this present dispute as Plaintiff's attempt to bring our prior personal ecclesiastical disagreements into the civil sphere. (Exhibit N)

1

4. I am the highest ecclesiastical authority ("Archbishop") and President of the Anglican Reformed Catholic Church, founded in late 2025. (**Exhibit A**). I am the founding bishop of the Jurisdiction of the Armed Forces and Chaplaincy ("JAFC"), a co-defendant in this lawsuit, and a bishop ordained in the Anglican tradition. (**Exhibit B**; **Exhibit C** (*Jurisdiction of the Armed Forces and Chaplaincy v. Anglican Church in North America*, No. 2:25-cv-12848-RMG (D.S.C.), ECF Doc. No. 6 (Motion for TRO), at 4)). JAFC is a diocese of the Anglican Reformed Catholic Church.

5. Prior to founding JAFC, I served as a U.S. Air Force combat fighter pilot and instructor for 27 years, and retired as a Lieutenant Colonel in 2009.

6. I founded JAFC's predecessor in 2007, when it was originally known as the Deanery of the Armed Forces and Chaplaincy. JAFC is an independent denominational church association incorporated under Alabama Law (**Exhibit D**) that, among other things, provides ecclesiastical endorsement to Anglican chaplains ("Anglican Chaplains®") serving in governmental and civilian institutions, including the U.S. Department of War (**Exhibit E-1**, **Exhibit E-2**).

7. As JAFC's bishop, I was the ecclesiastical superior to JAFC's Ministers; they continue to be subject to my oversight in matters of the Anglican faith and order as I serve as Archbishop of the ARCC.

8. As JAFC's President, I served as the endorser of the Anglican Chaplains®; and was responsible for JAFC's employment relationship with its chaplains.

9. On September 21, 2025, the then-Archbishop of the Anglican Church in North America ("ACNA"), Stephen Wood, issued an ecclesiastical inhibition purporting to restrict me from the exercise of ordained ministry. (**Exhibit F**) Under Anglican canon law, an inhibition is a formal suspension of a member of the clergy from ordained ministry; it is an act of ecclesiastical discipline that results following an investigative process; a process which, for unknown reasons, was not undertaken in this case.

10. The inhibition recited charges and allegations against me, and those charges were made public.

11. Since it is my position, and that of the JAFC's Executive Committee (Trustees), that ACNA has no canonical authority over me or JAFC,[1] I did not participate in ACNA's disciplinary proceedings against me.[2]

12. However, the inhibition, and ACNA's related communications, created confusion among JAFC's chaplains as to whether I remained their Bishop and President or whether they were now answerable to ACNA's leadership. In

---

[1] *See* **Exhibit G** (Jurisdiction of the Armed Forces and Chaplaincy v. Anglican Church in North America, No. 2:25-cv-12848-BHH, ECF Doc. No. 35 (Verified Amended Complaint), ¶¶ 63-64.
[2] *See* **Exhibit H**, Title IV (Ecclesiastical Discipline) of the ACNA Canons.

other words, it undermined both my ecclesiastical authority over my ministers and my employment authority over them as Anglican Chaplains®.

13. In direct response to the inhibition, and in order to address that confusion among my clergy, I convened an "All Hands" meeting with JAFC's Anglican Chaplains® on September 22, 2025—the *very next day* after the inhibition.

14. My purposes in convening the meeting were: (a) to respond, as their Bishop, to the inhibition and the charges it recited, and (b) to reassure the chaplains that I remained their Bishop and President.

15. The meeting was a closed, internal meeting of the church; it was not open to the public. Indeed, at the very beginning of the meeting, I confirmed for the record that the meeting was meant to be confidential.

16. Because I anticipated the possibility of litigation ensuing, counsel was also present at the meeting.

17. As the Anglican Chaplains®' Bishop and President, I had a duty to keep them informed of matters affecting their standing, their endorsements, and the ecclesiastical authority to which they were subject, and the chaplains had a corresponding interest in receiving that information.

18. I did not decide to convene the meeting unilaterally. The decision to do so was a collective decision of the JAFC bishops, Bishop Michael Williams, Bishop Mark Nordstrom, and me.

19. Spontaneously convening the chaplains in response to current developments is not unusual for JAFC. We have called meetings of this kind before, most recently in March 2026 when Defense Secretary Hesgeth removed rank insignia from military chaplains. Meetings of this kind are always private and limited solely to our chaplains.

20. The meeting was conducted over Microsoft Teams. Notice of the meeting was sent only to JAFC's Anglican Chaplains®, through our internal chaplains' distribution list, and it did not go to anyone outside our organization. (**Exhibit I**). The preparation and distribution of the meeting notice, and the security configuration and administration of the Teams meeting were handled by a former Anglican Chaplain and JAFC's prior Head of Communications, Dan Morrison. Dan Morrison was tasked with ensuring that entry to the meeting was limited to persons using a JAFC Anglican-chaplain email address, and no member of the public was admitted. This was standard protocol, and Dan Morrison had fulfilled this role well at prior meetings.

21. In the September 22, 2025 meeting, I addressed the charges recited in the inhibition and explained to my chaplains, as their bishop, the reasons I considered them to be unfounded and the reasons ACNA lacked the authority to act. To the extent I referred to Plaintiff, I did so in the context of ecclesiastical church governance and proceedings. My remarks were

addressed exclusively to my chaplains, concerned matters internal to the church; they were not directed to the public.

22. The Complaint notes that, at the meeting, I stated that I wanted the information "out there." By that I meant that I wanted my chaplains — the clergy I was addressing — to be fully aware of the information, so that they would not be misled into believing that they had come under ACNA's authority or that I was no longer their Bishop—or a bishop at all!

23. The meeting was recorded following the inquiry of Reverend Dave Ward, a former Anglican Chaplain based in Europe. (**Exhibit J**). As the meeting was held at 5:30pm Central Time, chaplains based in Europe would not have been able to attend live due to the time difference. The purpose of the recording was to ensure that Anglican Chaplains® who could not attend live would also be kept updated.

24. The day following the meeting, the JAFC withdrew its ministry support of the ACNA. As an independent Church, it is within the JAFC's right to associate with an ecclesiastical body of its choosing and is now with the ARCC, for whom I serve as Archbishop as previously stated.

25. I did not intend, authorize, or request that the meeting, my remarks, or any recording of the meeting be published to the public or to anyone outside the JAFC. It was exclusively intended for chaplains under my ecclesiastical and

endorsement authority. I believe the meeting recording was leaked by a former Anglican Chaplain who eventually decided to join ACNA and switch their ecclesiastical endorser to ACNA from JAFC.[3] Even while I did everything I could to ensure that the meeting was private, I cannot prevent attending Anglican Chaplains® from recording the meeting of their own prerogative, for instance by using their phone to record the meeting that they attended on their laptop.

26. The first time I realized that the meeting was leaked from beyond the closed group of Anglican Chaplains® was when I discovered that Plaintiff had filed this lawsuit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 6, 2026.

_____
**DEREK L.S. JONES**

---

[3] In the context of ACNA's attempted hostile takeover of JAFC and its Anglican Chaplains®, JAFC sought a Temporary Restraining Order (TRO) or, in the alternative, a preliminary injunction from the United States District Court for the District of South Carolina. (*See* **Exhibit C** (Motion for Temporary Restraining Order)). Following full briefing and argument, the Court granted a three-part preliminary injunction, enjoining ACNA from using JAFC's service mark and corporate name "Jurisdiction of the Armed Forces and Chaplaincy," JAFC's registered trademark "Anglican Chaplains®," and JAFC's trademarked logo. (*See* **Exhibit K** (Order dated November 6, 2025)). ACNA's attempted takeover resulted in at least 100 of JAFC's approximately 300 Chaplains cutting ties with JAFC. (*See* **Exhibit L** (Declaration of David Van Esselstyn ¶ 36, filed in support of the Motion for TRO or, in the alternative, a preliminary injunction); *see also* **Exhibit M** (Reply in Support of Motion for Preliminary Injunction or, in the alternative, a preliminary injunction) at 14.)